**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| KEITH C. LONG and JAMMIE L. LONG, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION |
| vs. ) | |
| ) | FILE NO. 1:02-CV-1235-CC |
| PHILLIPS & BROOKS/GLADWIN, INC. ) | |
| and THE TRAVELERS INSURANCE ) | |
| CO., ) | |
| ) | |
| Plaintiffs/Intervenors, ) | |
| ) | |
| vs. ) | |
| ) | |
| AMADA AMERICA, INC. ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**DEFENDANT AMADA AMERICA, INC.'S MOTION FOR
TRIFURCATION AND BRIEF IN SUPPORT**

COMES NOW **Amada America, Inc. ("Amada")**, Defendant herein, and moves to trifurcate this matter into phases for liability, compensatory damages, and punitive damages.

### I.   INTRODUCTION

As the Court is well aware, at this point this litigation is proceeding against Amada on very limited theories of recovery. For some time, the most significant

on-going issue in this action regarding Amada's liability was Plaintiffs' allegation that Amada should be liable as a "seller" of the subject machine.  The Court expressly found, however, in its Order of July 20, 2004, that Amada may only be held liable, if at all, for the claims originally asserted against its predecessor, Amada Engineering & Service Co., Inc. ("AESI").  Those claims alleged negligence and failure to warn against AESI as a service and maintenance company only, and as the Court has recognized, the action can proceed now against Amada only as a service and repair entity. (Order of July 20, 2004, pp. 11, 17).

     Since the issue of Amada's alleged liability as a seller has been clearly decided, Plaintiffs may only proceed against Amada in accordance with the allegations of their initial Complaint.  In that Complaint, Plaintiffs correctly identified AESI as a service and repair company, and only alleged negligent service against AESI.  This trial can now proceed under one theory only: that AESI, as a service and repair company, had a duty to warn Plaintiff Keith Long of dangers allegedly associated with the subject press brake, and it breached that duty thereby causing Plaintiffs' injuries.  This very limited question of liability can be easily resolved, and the narrow scope of the liability questions in this case warrants separate proceedings on liability and damages.

In contrast, the evidence and testimony on damages will be complex and time-consuming. It is expected that several of Mr. Long's many treating physicians will testify, along with experts on occupational therapy, vocational rehabilitation, and economic losses. It is expected that extensive evidence will be presented regarding Mr. Long's future needs, abilities, and economic and non-economic losses. The damages portion of this trial will involve significant time and expense, and will surely evoke sympathy in the jury. If the jury is asked to simultaneously decide on liability and damages, after hearing extensive damages evidence, the risk of prejudice to Amada is heightened.

## II.  ARGUMENT AND CITATION OF AUTHORITY

Pursuant to FED. R. CIV. P. 42(b), "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition in economy, may order a separate trial of any issues." "The decision to grant or deny a motion for separate trials on the issue of liability and damages is committed to the sound discretion of the court . . . In rendering this decision, the court must consider several factors: whether separate trials will be conducive to expedition of the litigation and to efficient judicial administration, whether separate trials will avoid prejudice, and whether the issues sought to be tried separately are

significantly different." *Beauchamp v. Russell*, 547 F. Supp. 1191, 1199 (N.D. Ga. 1982). A consideration of these factors here counsels in favor of trifurcation.

This Court should exercise its discretion and trifurcate this trial into a first phase to determine whether Amada, as a service and maintenance company, owed any duty of care to Plaintiffs to either warn Keith Long of alleged dangers of the press brake, or to install safety guards. The second phase would determine whether Mr. Long's injuries were proximately caused by Amada's negligence, if any is found, the amount of compensatory damages to be awarded for any injuries proximately caused by Amada, and whether there is "clear and convincing evidence" that Amada acted with "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences" to permit an award of punitive damages. *See* O.C.G.A. § 51-12-5.1. The third phase, in accordance with O.C.G.A. § 51-12-5.1, would be limited to evidence and argument on the amount of punitive damages, only after the jury and the Court determine that such damages are warranted in accordance with Georgia law. Proceeding under this method will assure an efficient trial on liability, and will avoid the prejudicial effect of the significant claims for compensatory damages.

4

First, proceeding separately on the liability issues would result in convenience to the parties and it would allow the jury to determine on an expedited basis whether Amada owed any duty to Plaintiffs in the first instance, and whether Amada breached any such duty. As the Court is well-aware, this is a hotly contested issue, which Amada asked to be resolved on summary judgment. Specifically, it is Amada's position that, as a service and repair company, it had no duty to either warn Mr. Long of potential dangers in using the press brake or to install safety guards, and that Georgia law is unequivocal on this issue. *See Barry v. Stevens Equipment Co.*, 176 Ga. App. 27, 29-30, 335 S.E.2d 129 (1985) ("[plaintiff's] allegations of negligence are that, merely because [the company] had knowledge of the alleged defect, it had a duty to take measures to correct the defect or warn of its danger. **We know of no case law in this State which places such a duty on an independent contractor**"). Although the Court has denied a renewed Motion for Summary Judgment on this issue, it specifically stated that "[t]o the extent that there is no legally sufficient evidentiary basis for a reasonable jury to find for Plaintiffs on their remaining claims, Defendant may move for the Court for judgment as a matter of law during the trial of this matter." (Order of February 27, 2006, p. 1). Conducting an initial, separate phase on liability will allow a resolution of this central issue in an abbreviated fashion, and could avoid an

unnecessary trial on damages if Amada is found to be free from liability either by the jury on the facts of the case, or by the Court as a matter of law.

Second, and more importantly, separate phases for liability and damages will avoid the otherwise unavoidable prejudice to Amada if the jury is asked to determine liability after hearing extensive evidence regarding Mr. Long's injuries. Amada anticipates that Plaintiffs will present a wealth of evidence of Mr. Long's injuries, treatment, current condition, physical limitations, lost wages, physical and mental suffering, and need for future care arising from this incident. In the Pre-Trial Order previously prepared, Plaintiffs named over **fifty** of Plaintiffs' friends and family members, all of whom could only testify to damages, and **nine** expert witnesses on damages issues such as Mr. Long's injuries and treatment, his vocational and occupational therapy, and Plaintiffs' economic damages. This is in contrast to only two liability experts. Plaintiffs will also present their claim for loss of consortium, and intend to show numerous pictures and memorabilia as part of their damages case. This evidence will no doubt prejudice Amada's ability to receive a fair and impartial consideration of the liability issues by the jury, and to prevent such injustice, separate phases for liability and damages are warranted. The time and expense of the damages portion of this case far outweigh the costs and time for any liability phase, and ordering separate phases for liability and

damages could eradicate the need for a lengthy proceeding on damages if the jury does not find liability.

This district court has ordered separate phases under a similar factual situation, and has recognized both the benefit of separate phases for liability and damages, and the risks of denying a request for bifurcation. *See Beauchamp*, 547 F. Supp. 1191 (Freeman, J.). In *Beauchamp*, a man suffered a debilitating injury when an automatic palletizer crushed his head. His wife sued the manufacturer and several of the makers of component parts. In granting a motion to bifurcate the trial into liability and damages phases, based on the theory that evidence of the husband's significant injury would prejudice the jury on the ultimate issue of liability, Judge Freeman stated, "a paramount consideration in ruling on a motion to bifurcate is a fair and impartial jury to all litigants." *Beauchamp*, 547 F. Supp. at 1199. Recognizing the significant injuries at issue, and the distinct evidence that would relate to the liability issues, the court held:

> In order to avoid potential prejudice, it would be preferable to permit the jury to concentrate on the complicated issue of liability without considering evidence on the extent of [plaintiff's husband's] injuries and the damages the plaintiff seeks for these injuries.

*Id.* at 1200.

Similarly, in another action involving an amputation injury suffered by the plaintiff, a district court trifurcated an action into phases for liability, damages, and

indemnification.  *See Miller v. New Jersey Transit Auth. Rail Operations*, 160 F.R.D. 37 (D.N.J. 1995).  The *Miller* Court's decision was based on the fact that the defendant would be prejudiced by the simultaneous presentation of liability issues with the plaintiff's significant claim for damages:

> In this case, the damage and indemnification testimony is, in large measure, unrelated to the liability testimony.  Trifurcation may actually shorten the trial.  Additionally, it would be preferable to have the jury concentrate on the issue of liability without being aware of the damage figures involved so that prejudice would not result to the Defendants from the jury's consideration of the nature and severity of Mr. Miller's injuries when determining whether or not Defendants were actually responsible for the accident.  Finally, it is inconceivable to this Court that any jury would be unaware of the severity of the injuries.  The proofs at the liability phase, even though somewhat limited, will amply demonstrate that Plaintiff lost three limbs and suffered excruciating pain. Thus, any claim of prejudice by Plaintiff that the jury will not be presented with the total picture is illusory.  Furthermore, any claim of prejudice for additional costs associated with recall of certain witnesses is minimal when compared to Plaintiff's demand (and likely recovery if liability is found) for millions of dollars.

*Id.* at 41.

The same considerations exist here.  The jury will certainly see that Mr. Long suffered a significant injury, even without discussion of the extent of that injury or the future care allegedly needed as a result of Mr. Long's injuries.  It is more fair and more efficient to allow the jury to consider the limited liability questions before it is asked to decide on what damages to award, if any.

In addition, Plaintiffs have already stipulated to separate phases for compensatory damages and punitive damages, and Georgia law provides for a separate proceedings to determine the amount of punitive damages. O.C.G.A. § 51-12-5.1. As such, after a phase to address liability, a phase to establish proximate cause and compensatory damages may commence if necessary, to be followed by a phase on the amount of punitive damages to the extent the Court and the jury each find such damages are warranted under Georgia law. Trifurcation has been approved by several federal courts. *See Sanford v. Johns-Manville Sales Corp.,* 923 F.2d 1142, 1145-46 (5th Cir. 1991) (district court trifurcated issues of liability, damages, and punitive damages in asbestos litigation); *Yung v. Raymark Industries, Inc.,* 789 F.2d 397, 400 (6th Cir. 1986) (trifurcation to separate out statute of limitations defense appropriate); *Beirne v. Security Heating-Clearwater Pools, Inc.,* 759 F. Supp 1120, 1124 (M.D. Pa. 1991) (trifurcation appropriate in wrongful death case); *Aetna Casualty & Surety Co. v. Nationwide Mutual Insurance Co.,* 734 F.Supp. 204, 208 (W.D. Pa. 1989) (trifurcation of issues appropriate in action by one insurer to recover against another in uninsured motorist case); *Miller*, *supra* (trifurcation appropriate in personal injury case to avoid juror confusion and prejudice; court further separated damages phase into compensatory and indemnity phase). State courts have also approved of trifurcated

proceedings.  *See Wal-Mart Stores, Inc. v. Lee*, 348 Ark. 707, 74 S.W.3d 634 (Ark. 2002) (trial court divided case into phases for liability, compensatory damages, and punitive damages).  Trifurcation is appropriate here.

Finally, the liability and damages issues are significantly different and can easily be separated.  The liability issues focus solely on what duty Amada, as a service and maintenance company, owed to Keith Long.  This is completely distinct from the determination of whether Mr. Long's injuries were caused by Amada's alleged negligence, and the damages which Plaintiffs may potentially recover.  Amada submits that the factors considered in ordering separate phases for liability and damages are met here, and the within Motion should be granted.

### III.  CONCLUSION

For the reasons set forth above, Amada prays that its Motion be GRANTED, and that the Court trifurcate this action into separate phases for 1) liability on the part of Amada for a breach of a duty owed to Plaintiffs; 2) causation, compensatory damages, and liability for punitive damages; and, if appropriate, 3) the amount of punitive damages.


Pursuant to LR 7.1D, counsel for Defendant certifies that this pleading has been prepared with one of the font and point selections approved by LR 5.1B.

Respectfully submitted, this 28th day of April, 2006.

W<span>EINBERG</span>, W<span>HEELER</span>, H<span>UDGINS</span>,
G<span>UNN</span> & D<span>IAL</span>, LLC

/s/ Howard J. Russell
Carol P. Michel
Georgia Bar No. 504046
Howard J. Russell
Georgia Bar No. 630632

950 East Paces Ferry Rd., Suite 3000
Atlanta, Georgia  30326
(404) 876-2700

## CERTIFICATE OF SERVICE

I certify that on April 28, 2006, I electronically filed DEFENDANT AMADA AMERICA, INC.'S MOTION FOR TRIFURCATION AND BRIEF IN SUPPORT with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

> L. Matt Wilson, Esq.            (also served by hand delivery)
> The Wilson Law Firm, P.C.
> 950 East Paces Ferry Road
> Atlanta, Georgia  30326
>
> Matthew J. Ashby, Esq. (also served by U.S. postage prepaid mail)
> Laurel C. Schmitt, Esq.
> Savell & Williams, LLP
> 1500 The Equitable Building
> 100 Peachtree Street
> Atlanta, Georgia  30303

This 28th day of April, 2006.

> WEINBERG, WHEELER, HUDGINS,
> GUNN & DIAL, LLC
>
> /s/ Howard J. Russell
> Carol P. Michel
> Georgia Bar No. 504046
> Howard J. Russell
> Georgia Bar No. 630632

950 East Paces Ferry Rd., Suite 3000
Atlanta, Georgia  30326
(404) 876-2700